UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EMILY HIZER, on her own behalf and on behalf of a class of those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 3:16-cv-885 |
| PULASKI COUNTY, INDIANA, | ) ) ) |
| Defendant. | ) |

**Class Action Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.   The Pulaski County Courthouse is not fully and readily accessible to persons with mobility impairments and other physical disabilities.  Emily Hizer, a Pulaski County resident with a physical disability that causes mobility impairments, therefore has great difficulty in accessing the government services provided in the Courthouse and has difficulty in fully participating in the political life of the County that is centered in the Courthouse. Other persons with physical disabilities in the County have a similar difficulty.  The failure of the County to make the Courthouse fully and readily accessible violates both the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794.  Ms. Hizer, on her own behalf and on behalf of a class of persons similarly situated, seeks appropriate declaratory and injunctive relief.

**Jurisdiction, venue, cause of action**

2.   This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

[1]

3. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

4. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391.

5. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794(a)(2).

**Parties**

6. Emily Hizer is an adult resident of Pulaski County.

7. Pulaski County, Indiana, is an Indiana county,

**Class action allegations**

8. Emily Hizer brings this action on her own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

9. The class is defined as:

> all persons with mobility impairments or other physical disabilities who access or attempt to access, or who will access or will attempt to access, the Pulaski County Courthouse.

10. The class meets all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically,

> a. The class is so numerous that joinder of all members is impracticable. Although the exact size of the class is currently unknown, Census data reveals that the estimated population of Pulaski County as of July 1, 2015 was 12,899. United States Census Bureau, *Quick Facts: Pulaski County, Indiana,* http://www.census.gov/quickfacts/table/PST045215/18131 (last visited 12/16/16).  In 2014 the overall prevalence of disability in Indiana for non-institutionalized persons was  12.6% for persons aged 21 to 64, 27.2% for persons aged 65 to 74, and 51.8% for persons aged 75 or older. Cornell University, *2014 Disability Status Report: Indiana* at 5 http://www.disabilitystatistics.org/StatusReports/2014-PDF/2014-StatusReport_IN.pdf  (last  visited  12/19/16).  Persons  with ambulatory difficulties were the largest percentage of non-institutionalized persons with disabilities over the age of 21. *Id.* at  18, 20, 22. Among all ages of non-institutionalized persons more than 10% reported either having an ambulatory or self-care disability or both. *Id.* at 10. Thus, it can be estimated that more than 10% of Pulaski County's population would have difficulty in accessing, readily accessing, or fully accessing the Pulaski County Courthouse.

      b.    There are questions of law or fact common to the class – whether the Pulaski County Courthouse denies plaintiff and the class full and equal access to its programs, services, and activities in violation of the Americans with Disabilities Act and the Rehabilitation Act.

      c.    The claims of the named plaintiff are typical of those of the class.

      d.    The named plaintiff will fairly and adequately represent the class.

11.    The further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met in this cause as at all times Pulaski County has acted and has refused to act on grounds generally applicable to the class as a whole.

12.    Plaintiff is represented by experienced counsel who should be appointed as counsel for the class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

**Legal background**

13.    Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

14.    The term "public entity" includes local government.  42 U.S.C. § 12131(1)(A).

15.    A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and serves, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2).

16.    The ADA provides that the Attorney General is to promulgate regulations to implement Title II.  42 U.S.C. § 12134.  These have been promulgated at 28 C.F.R. Ch. 1, Pt. 35.  The regulations distinguish between structures that have been built or altered since January 26, 1992,

[3]

28 C.F.R. § 35.151 and those that have not been and are labeled "existing facilities," 28 C.F.R. § 35.150.

17. Whereas the new and altered structures must meet specific architectural standards, 28 C.F.R. § 35.151(c), existing facilities must meet a general standard that "[a] public entity shall operate each service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities," 28 C.F.R.§ 35.150(a).

18. To the extent that structural changes had to be made to existing facilities to make them readily accessible, the changes had to be made by January 26, 1995.  28 C.F.R. § 35.150(c).

19. The Rehabilitation Act, 29 U.S.C. § 794(a), provides that "no otherwise qualified individual with a disability" may be discriminated against on the grounds of that disability by any program receiving federal funding.

20. The Rehabilitation Act's definition of "individual with a disability" is identical to the definition for, among other things, Title II of the ADA, 29 U.S.C. § 705(20)(B).

21. An individual with a disability is "qualified" "with respect to services" if he or she "meets the essential eligibility requirements for the receipt of such services." 28 C.F.R. § 41.32(b).

22. The ADA and Rehabilitation Act are similar in substance, aside from the federal funding requirement in the Rehabilitation Act and therefore "the standards applicable to one act are applicable to the other. . . . and precedent under one statute typically applies to the other." *Washington v. Indiana High School Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999).

**Factual allegations**

23. The Pulaski County Courthouse is located in the county seat of Winamac, Indiana.

24. The Courthouse is a three story limestone building that was completed in 1895.

25. The first floor of the Courthouse houses the offices of the County Assessor and County Surveyor.

26. The second floor of the Courthouse houses the offices of the County Auditor, County Treasurer, the Clerk of the Courts,

27. The office of the Pulaski County Commissioners are on the third floor of the Courthouse and the Commissioners meet twice a month in the Commissioners' Room on the third floor of the Courthouse.

28. The Pulaski County Council also meets monthly in the Commissioners' Room on the third floor of the Courthouse.

29. The third floor of the Courthouse houses the Pulaski Circuit Court, including its offices and the courtroom.

30. The floors of the Pulaski County Courthouse are connected by a stairway as well as an elevator.

31. According to the Indiana Division of Fire and Building Safety, which regularly inspects public elevators, the elevator was installed in 2004, although the elevator appears older.

32. The installation of the elevator after the building of the Courthouse is deemed to be an "alteration" under the ADA.

33. The elevator does not contain an automatic door.

34. Instead, a person wanting to access the elevator must open an extremely heavy door that swings out. Here is a picture of the door of the elevator on one of the floors.



35.     There is then a metal gate that completely covers the entrance of the elevator that must be slid open for the person to enter the elevator.  Here is a picture of the metal gate, looking into the elevator.



36. As can be seen, the gate does not contain a handle so in order to open and close it the person must put his or her hands in the gate itself and pull or push the gate.

37. The elevator itself is extremely small, approximately 3 feet by 4 feet.

38. Once inside the elevator the person must close the gate. If the gate is not fully closed the elevator will not move.

39. If a person is in a wheelchair or similar device the person will have to attempt to open the elevator door, which swings out into their path of travel, open the gate, enter into the elevator, and maneuver themselves into a position where they can close the gate and touch the floor buttons of the elevator.

40. For persons with physical disabilities, particular those in wheelchairs or other devices, this may be extremely difficult if not impossible to do.

41. If a person with a disability is able to do all this, he or she must push the button of the floor to which the person wishes to travel and must maintain constant contact with the button. If the person ceases to push the button the elevator will stop.

42. Since there is no interior door on the elevator the person will be able to see the elevator move up the floor and must release the button when he or she arrives at the floor.

43. Once the person arrives at his or her destination floor the person must again open the gate and open the door to exit the elevator.

44. There are written instructions concerning operating the elevator both inside the elevator and outside of it.

45. Among other things, the instructions outside of the elevator provide that if the person needs assistance with the elevator that he or she is to push a button located on the outside of the

door.  On information and belief the button sends a signal to someone in the office of the County Auditor who is to come to the elevator to attempt to assist the person.

46.    There is no similar button in the inside of the elevator. Instead, there is a telephone that has a piece of paper on its receiver indicating telephone numbers that the occupant should call in the case of an emergency as indicated in the following photograph.



47.    The call button on the outside of the elevator is potentially useful only when a person needs assistance during a time when there is someone in the Auditor's office.  Calling for assistance to open the door and maneuver into the elevator is embarrassing and demeaning.

48.    If a person using the elevator leaves the gate open the elevator will not move.  The persons with a disability who wants to summon the elevator on another floor will have to push the button to summon someone from the Auditor's office who will have to find what floor the elevator is located and close the gate.  This is also embarrassing and demeaning.

49. Both the Pulaski County Council and Pulaski County Commissioners meet after normal office hours and at these times there is no one available to assist persons with the elevator.

50. In apparent recognition of this the County Council minutes, for example, routinely contain a statement indicating, in part:

> Taxpayers appearing at the meeting shall have, [*sic*] right to be heard. . . .
>
> Persons who have special needs, require Auxiliary Aides, or need assistance in entering the building should call the Auditor's office (574-946-3653) in advance.

51. The elevator is so small that it is difficult for persons to enter into it who have larger power wheelchairs.

52. The door and gate mechanism of the elevator are such that persons with mobility impairments or limitations in the use of their hands will be unable to open the door to the elevator and open and close the gate to operate the elevator.

53. Once in the elevator the person will, as noted above, have to maintain continuous pressure on the floor button to successfully travel to the next floor. This is extremely difficult for persons who, as a consequence of physical disabilities, have difficulties with use of their hands.

54. The elevator itself is so small that if a person is in a larger electric wheelchair he or she may have difficulty in even entering the elevator and, once in, will have extreme difficulty in maneuvering the elevator so he or she can maintain the continuous pressure on the button so the elevator will operate.

55. Although during regular business hours a person with a disability who has difficulty in calling and entering the elevator may push a button and hope that someone from the County Auditor's office comes to assist, the space in the elevator is so small that it is extremely awkward for the assistant and the person with a disability to maneuver into and around the cab of the elevator. This is especially true if the person with a disability is in a large power wheelchair.

55. Once in the elevator a person with a disability who is unable to maintain contact with the button or otherwise operate the elevator may call someone for help, but there is no way for anyone to enter the elevator to help the person, even if the person calls for help.

56. Assuming that the elevator was installed in 2004, it fails to meet the ADA Accessibility Guidelines in effect at that time. Among other things it does not have automatic doors and automatic operation.

57. Regardless of when it was installed, the elevator is not readily accessible by persons with physical disabilities.

58. The public restrooms in the Pulaski County Courthouse are on the building's first floor.

59. The entrances are not wide enough for a person in a wheelchair to be able to easily enter either the male or female restrooms.

60. Each restroom contains a stall that is designated for persons who have disabilities.

61. However, there is inadequate room for a person with a disability to maneuver around the stall, especially if the person is in a wheelchair or other similar device.

62. The bathrooms are not readily accessible to persons with physical disabilities.

63. Emily Hizer resides in Winamac, near the courthouse.

64. Winamac is the county seat for Pulaski County.

65. Ms. Hizer has multiple sclerosis, a progressive neurological disease that, among other things, causes progressive weakening of the extremities.

66. As a result, she is unable to walk any distance and travels through use of a motorized "scooter" that is smaller than an electric wheelchair.

67. She is frequently required to go the Pulaski County Courthouse.

68. Her father is an attorney in Winamac and she is a part-time legal assistant for him.

69. This requires her to travel to the Courthouse and to access the Clerk's office and other areas of the Courthouse that require her to use the elevator as they are not on the ground floor.

70. She is on the Americans with Disabilities Act Board, appointed by the Pulaski County Commissioners, that meets regularly on the first floor of the Courthouse to address issues of interest to persons with disabilities in Pulaski County including accessibilities issues.

71. She frequently attends meetings of the county commissioners and county council that, as noted, are held on the upper floors of the Courthouse.

72. She must, therefore, use the Courthouse elevator to attend meetings and transact business in the Courthouse as she is unable to climb stairs.

73. She is generally able, with difficulty, to open the elevator door and move the gate to enter the elevator. However, it is extremely awkward and requires a great deal of effort on her part to complete each step necessary to enter the elevator and make it move to the appropriate floor.

74. Because of physical problems caused by her multiple sclerosis she sometimes has difficulty in maintaining continuous contact with the button so that the elevator keeps moving. When this occurs it becomes extremely difficult for her to operate the elevator.

75. She has, on occasion, during normal business hours, had to push the button to have someone from the County Auditor's office come to assist her.  Once this happens the person will have to maneuver around her to open the door and gate and to assist her.

76. She has had to call someone from the Auditor's office to assist her because the gate to the elevator has been left open on another floor of the Courthouse.

77. She finds having to call someone to assist her to be both embarrassing and demeaning.

78. If she attends a meeting after normal business hours she normally makes sure that she is accompanied by someone who can assist her.  This is burdensome.

79. If she is not accompanied by anyone and she is attending a meeting held on the upper floors of the courthouse after normal hours, she will have to call ahead to make sure that someone is there who can assist her with the elevator, if necessary. This is both burdensome and embarrassing and reemphasizes the fact that she is not deemed to be a full-fledged member of the community.

80. She has had occasion to use the women's restroom on the first floor of the courthouse. She has found it very difficult to maneuver her scooter and to place herself on the stool in the restroom.

81. Her multiple sclerosis is a progressive disease and therefore she anticipates that she will have more muscle weakness and other physical problems in the future that will make it even more difficult to access the Courthouse.

82. Ms. Hizer is active in the disability community in Pulaski County and is aware that there are many persons with physical disabilities who are not able to access or readily access the Courthouse because of the elevator and the bathrooms.

83. For example, she is aware that one man, in a large electric wheelchair, came to the Courthouse to get a marriage license. However, he was unable to enter the elevator and therefore left the Courthouse without getting a license. She is also aware of another county resident who is paralyzed who is unable to gain access to the elevator.

84. The Americans with Disabilities Act Board she has been appointed to by the County Commissioners contains persons who have family members who would have difficulty using the elevator and accessing the restrooms because of their physical disabilities.

85. She has, in the past, run a support group for persons with multiple sclerosis. The group had 100 people in it, approximately 60 of whom were from Pulaski County. Many of these

people have mobility impairments because of the disease and would have difficulty accessing or fully accessing the Courthouse because of the elevator and the restrooms.

86.     She believes that the disability community in and around Pulaski County knows that the Courthouse is not accessible or fully accessible and, as a result, many persons with disabilities avoid going to the Courthouse.

87.     Pulaski County receives federal funding.

88.     Plaintiff and the putative class are being caused irreparable harm for which there is no adequate remedy at law.

**Legal claims**

89.     The Pulaski County Courthouse is not readily accessible to persons with physical disabilities in violation of both the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1.     Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.     Certify this case as a class action with the class as defined above.

3.     Declare that defendant has violated federal law for the reasons noted above.

4.     Enter a permanent injunction requiring defendant to insure that the Pulaski County Courthouse is fully accessible to persons with disabilities as required by federal law.

5.     Award plaintiff her costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 794a(b) and 42 U.S.C. § 12133.

6.     Award all other proper relief.

*s/ Kenneth J. Falk*
Kenneth J. Falk
No. 6777-49

ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org

Attorney for Plaintiff and the putative class